NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1109
_____

CHENG BIN CHEN,
                                    Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                    Respondent
_____

On Petition for Review of a Decision
and Order of the Board of Immigration Appeals
(BIA No. A 206-622-147)
Immigration Judge:  Walter A. Durling
_____

Submitted under Third Circuit LAR 34.1(a)
December 11, 2015

BEFORE:  FUENTES, CHAGARES, and GREENBERG, Circuit Judges

(Filed: December 15, 2015)
_____

OPINION*
_____


GREENBERG, Circuit Judge.
_____

*This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

This matter comes on before this Court on a petition for review of a decision and order of the Board of Immigration Appeals ("Board") entered December 17, 2014, dismissing an appeal from a decision of an immigration judge ("IJ") finding the petitioner, Chen Bin Chen, removable and denying his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We will deny the petition for review.

Chen is a single 30-year old male citizen of the People's Republic of China. Since 2012 Chen has sought to enter the United States both legally and illegally. He initially sought to enter legally by obtaining a student visa. Between 2012 and 2014 he twice applied for student visas to attend Tacoma Community College in Washington State and once applied for a student visa to attend the State University of New York. All of those attempts were unsuccessful. He claims that at about the time of the third rejection of his applications for a student visa, the Chinese government began mistreating him because of his involvement with an unsanctioned underground Chinese Christian church.

Obviously Chen did not regard the rejections of his applications for a student visa as final impediments to coming to the United States because, with the assistance of a smuggler, he illegally entered the United States from Mexico on or about February 28, 2014, without inspection or parole. The Department of Homeland Security ("DHS") reacted to Chen's illegal entry on March 27, 2014, by serving him with a notice to appear, a procedure that initiated removal proceedings. At a hearing on the removal proceedings on April 7, 2014, Chen, who was represented by counsel, admitted that he was removable but informed the IJ that he was seeking asylum, withholding of removal,

2

and protection under the CAT. When the hearing resumed on April 28, 2014, Chen filed his application for the above relief. In his application he asserted that in January 2014, the Chinese government began mistreating him because of his participation in the underground Christian church.

At the outset of the resumed hearing on July 30, 2014, the IJ admitted into evidence documents that the DHS supplied including the United States State Department's country reports on human rights in China from 2012 and 2013. Chen testified at the hearing that a friend suggested that he attend a Christian religious meeting or service and that he had done so on January 5, 2014. The following day, January 6, 2014, he attended another Christian meeting at a parishioner's home, but the police interrupted the meeting and arrested 12 attendees including Chen.

Chen claims that the police took him to a local jail and held him for three days, beating him with fists and batons so severely as to leave bruises. During the three-day detention, the police interrogated Chen but he refused to give them the names of other church members. After three days the police released him to his parents with an order for him to report every three days to a police station to ensure that he was not attending a non-sanctioned church.

Chen testified that his father made a substantial payment to obtain his release from police custody and to a smuggler to get him out of China. He also testified that he would be immediately arrested and jailed if he returned to China because he had left China illegally and did not obey the order to report to the police station every three days. Further, Chen testified that his family told him that on May 2, 2014, police officers

visited his family home and informed his family that they would arrest Chen if he returned to China.

Chen claimed that after he was released he saw a doctor in China on January 9, 2014, at which time an x-ray was taken. But he did not have a copy of the x-ray. Though Chen claimed to be a Christian, he did not provide any documents to the IJ during the hearing to support the claim and he did not offer any documents proving that he ever attended any church meetings in China. In fact, he did not produce documents to support any of his testimony. It is significant that Chen had an aunt who lived in New York but he did not call her to testify on his behalf even though she could have supported his claims, though only on a hearsay basis.

The IJ had little problem with the case. On July 30, 2014, the IJ rejected Chen's claim for asylum and other relief, concluded that Chen was removable, and, ordered Chen removed to China. The IJ concluded that Chen's claim was implausible and he found that Chen was not credible and that he failed to corroborate his claims adequately. The IJ stated, "[w]ell, to put it mildly, this Court thinks this whole case is totally bogus." A.R. 71. Though the IJ could not say that the incidents that Chen described did not occur, he said that "when an individual[']s testimony is vague in certain aspects, or the claim itself begs for corroboration, corroboration should be produced." A.R. 72. The IJ observed that Chen was unable to answer numerous questions, prompting the IJ to conclude that Chen "did not know all those questions or conveniently forgot." A.R. 72. In this regard, the IJ noted that Chen had not obtained anything to corroborate what the IJ called his

4

"convenient" claim, including any type of arrest or police report, or letters from church officials or family indicating that he had attended services in China. Id.

The IJ found inconsistencies between Chen's testimony, where he claimed he would be killed if returned to China, and his asylum application, where he indicated that he would be jailed if returned. A.R. 72-73. The IJ also made the obvious finding that Chen's inability to obtain student visas affected his credibility. A.R. 74-75. In this regard, we cannot avoid recognizing that Chen contends that he became interested in Christianity only after he failed to obtain a student visa to come to the United States.

On August 27, 2014, Chen appealed from the IJ's decision to the Board. On December 17, 2014, the Board dismissed Chen's appeal, specifically agreeing with the IJ that Chen did not provide adequate corroboration of his testimony to meet his burden of proof for the granting of asylum or withholding of removal. In reaching its result, the Board cited our decisions in Quao Lin Dong v. Att'y Gen., 638 F.3d 223, 229 n.3 (3d Cir. 2011), and Abdulai v. Ashcroft, 239 F.3d 542 (3d Cir. 2001), and noted that, in accordance with INA § 208(b)(1)(B)(ii), 8 U.S.C. § 1158(b)(1)(B)(ii), "where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." A.R. 3. The Board observed that the only corroborative evidence Chen attempted to obtain through his parents in China were the x-rays from the hospital, but his parents had been told that he had to request the x-rays in person. A.R. 3. The Board concluded that Chen made "no other efforts to obtain any corroborative evidence," such as requesting letters from his parents,

5

even though he had been in touch with them. A.R. 3-4. The Board noted that Chen's parents could have verified parts of his claims inasmuch as Chen asserted that his father had made a payment to get him out of jail and that the police allegedly spoke with his parents in their home while he was in police custody. A.R. 4. The Board also observed that Chen did not ask his aunt, who lived in New York, and who allegedly was aware of his problems in China, to testify or even submit a letter on his behalf. A.R. 4. Finally, the Board agreed with the IJ's conclusion that Chen had failed to demonstrate that it was more likely than not that he would be tortured in China by or with the acquiescence of government officials if he returned to China. Inasmuch as Chen did not have corroboration for his case, the Board did not assess his credibility. Chen then filed the petition for review now before us.

The Board had jurisdiction under 8 C.F.R. § 1003.1(b)(3) and we have jurisdiction under 8 U.S.C. § 1252. Venue is proper in this Court as the removal proceedings were completed in York, Pennsylvania. See 8 U.S.C. § 1252(b)(2). Chen concedes that if, as here, the Board issues its own decision on the merits we review its findings of fact on a substantial evidence basis, but he points out that we review its legal conclusions de novo. The distinction between factual findings and legal conclusions is not material in this case because under any standard of review we would deny Chen's petition for review.

In considering this case, it is clear there is substantial evidence supporting the Board's finding that Chen did not satisfy his burden to obtain relief because he did not provide adequate, or, indeed, any corroborating evidence to support his claims. Chen alleged that he had been mistreated in China and that his parents had bailed him out of

6

jail. He also alleged that in May 2014 his parents had informed him via telephone that the police were looking for him in China, and that his aunt in New York knew of his experiences in China. Yet he made no effort to obtain evidence corroborating his claims of mistreatment.

The Board did not err when it denied Chen relief because he did not corroborate his testimony. Even if Chen had been credible, in the circumstances of this case he needed to supply corroborating evidence to meet his burden of proof. See Chen v. Gonzales, 434 F.3d 212, 217-18 (3d Cir. 2005). If it is reasonable to expect that an applicant would provide corroboration and if the applicant is given an opportunity to explain its absence, failure to corroborate may serve as the basis for the denial of a claim. Mulanga v. Ashcroft, 349 F.3d 123, 133-34 (3d Cir. 2003). With respect to corroboration we have explained that the IJ must engage in the following three-part inquiry: "(1) an identification of facts for which it is reasonable to expect corroboration; (2) an inquiry as to whether the applicant has provided information corroborating the relevant facts; and if he or she has not; (3) an analysis of whether the applicant has adequately explained his or her failure to do so." Abdulai, 239 F.3d at 554 (citation and internal quotation marks omitted).

Chen does not deny that the IJ explained what corroboration he expected. But when Chen was asked whether he had obtained corroboration, he acknowledged that he had not done so, attributing that failure to the circumstance that he was in detention. Yet we do not understand why he could not have obtained an affidavit from his aunt in New York, whom he had told about the incident. Though his aunt's affidavit would have been

7

of limited help as she did not have personal knowledge of what had happened to Chen in China, still her affidavit would have had at least some value because it would have demonstrated that Chen had made his claims before the hearing in these proceedings. Moreover, Chen also could have asked his aunt to help him obtain an affidavit from his parents, who could have corroborated the fact that they paid to have him released from custody, took him to the hospital for treatment, and attempted to obtain Chen's x-rays. Consequently, Chen did not adequately explain why he did not have corroborating evidence. Overall, we can understand why the IJ rejected Chen's claim for relief. Indeed, the timing of the self-created circumstances – i.e., his sudden interest in Christianity, on which he bases his claims for asylum and other relief – coming immediately after his failure to obtain a student visa suggests that the IJ was correct when he determined that Chen's claim for asylum and other relief was meritless.

For the foregoing reasons we will deny the petition for review of the decision and order of the Board of December 17, 2014.